UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SANDRA AND JACK SIMMONS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-5911** |
| **LEXINGTON INSURANCE CO., ET AL.** | **SECTION: "S" (2)** |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Judy C. Berglin (Doc. #122) is **GRANTED**, and the case is **DISMISSED**.

**BACKGROUND**

Plaintiffs, Sandra and Jack Simmons, own a residence located at 232 Moonraker Drive, Slidell, Louisiana, which was damaged as a result of Hurricane Katrina. Plaintiffs allege that their docks, boathouse, hoist, cabana, and landscaping were destroyed by a sailboat that was washed ashore by Hurricane Katrina. The allegedly offending vessel is the TRUST ME II, a 47 foot sailboat owned by Judy C. Berglin ("Berglin"). Plaintiffs filed suit against Berglin and her insurer, St. Paul Fire & Marine Insurance Company ("St. Paul"), alleging that Berglin breached the duty she owed

to the public in that she "failed to heed public warnings of an impending Category 4 hurricane and failed to take any measures whatever to move, relocate, or secure the 40-foot sailboat."[1]

Berglin filed a motion for summary judgment arguing that there is no genuine issue of material fact that she took all reasonable and available measures to ensure that the TRUST ME II was properly secured before Hurricane Katrina struck, and that the claims against her should be dismissed pursuant to the "Act of God" defense. On August 29, 2005, Berglin was living in Oregon. However, she was visiting her daughter in the New Orleans, Louisiana area about one week to ten days before Hurricane Katrina struck. Before she left Louisiana, Berglin asked Frank Beber ("Beber"), who owned the commercial building next to Berglin's boat slip, and Pete Thomas ("Thomas"), a neighbor who cared for the TRUST ME II in her absence, to check on the TRUST ME II to make sure its moorings were adequate in preparation for the oncoming hurricane. Beber is a mariner with over 40 years of experience that includes serving as the safety officer aboard the United States Coast Guard 300 foot "tall ship EAGLE, American's Cadet Officer Training ship. Beber's duties aboard the EAGLE include overseeing the vessel's moorings. Also, Thomas is a boat builder who owned and lived on a 65 foot schooner. Beber testified that he added additional mooring lines to the TRUST ME II, that the vessel had as many mooring lines as possible, and that she was secured as well as she could be at that location. Further, Beber testified that, after Hurricane Katrina, the buildings next to Berglin's slip were collapsed, Berglin's dock and piers were gone, and

---

[1] Hurricane Katrina was a Category 5 hurricane, however, in paragraph 12 of their Second Supplemental and Amending Complaint (Doc. # 73), plaintiffs refer to Hurricane Katrina as a Category 4 hurricane.

that the pilings were bent at a 45 degree angle. He also testified that other docks were destroyed and that none of the sailing vessels that were moored in the area were in their original locations.

Plaintiffs have conceded that they have no knowledge of how the TRUST ME II was moored prior to Hurricane Katrina, what steps Berglin took to ensure that the vessel was secured in advance of the storm, or the condition of Berglin's dock, pier, and pilings after the storm. Berglin argues that it is irrelevant whether she was negligent because the marina itself was destroyed and the vessel would have come loose regardless of how it was moored. She argues that the "Act of God," Hurricane Katrina, would have caused the same damages with or without the alleged negligence. Finally, Berglin argues that she had no obligation to move the vessel because it would have been impractical to do so under the circumstances presented by Hurricane Katrina.

Plaintiffs argue that Berglin is not entitled to summary judgment because there are disputed issues of material fact regarding whether Berglin exhausted every reasonable possibility of securing the TRUST ME II, whether the mooring lines should have been attached higher on the pilings, and whether the storm surge was not so high that Berglin could not have secured the TRUST ME II in a manner that kept her from coming loose.

## ANALYSIS

**1.     Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that

3

there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**2.    The "Act of God" Defense**

Under the general maritime law, if a vessel that is moving under her own power or has been set adrift collides with an anchored vessel or a fixed object, the moving or drifting vessel is presumed to be at fault. The Louisiana, 70 U.S. 164 (1865); Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724, 726 (5th Cir. 1967); James v. River Parishes Co., Inc., 686 F.2d 1129, 1132-33 (5th Cir. 1982).[2] "The presumption suffices to make a *prima facia* case of negligence against the moving vessel."Brown & Root Marine, 377 F.2d at 726. The presumption of negligence is based on the logical deduction that a drifting vessel was mishandled or improperly moored. James, 686 F.2d at 1132-33. The presumption shifts the burden of proof onto the moving or drifting vessel to show that she was not at fault. Delta Transload, Inc. v. M/V Navios

---

[2] Plaintiffs reference this presumption in their opposition to Berglin's motion for summary judgment. Berglin points out that there is a choice of law question as to whether the general maritime law or Louisiana law applies to this action. Neither party has requested that the court engage in a choice of law analysis, and it is not necessary in order to resolve Berglin's motion for summary judgment.

4

Commander, 818 F.2d 445, 449 (5th Cir. 1987). The custodian of the drifting vessel can demonstrate that it was not at fault by affirmatively showing "that the drifting was the result of an inevitable accident, or *vis major*, which human skill and precaution and a proper display of nautical skill could not have prevented. The Louisiana, 70 U.S. at 173. If the custodian of a drifting vessel "offers as a defense that the collision was an unavoidable accident or *vis major*, the burden of proving inevitable accident or Act of God rests heavily upon the vessel asserting such defense." James, 686 F.2d at 1132.

In Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co., 803 So.2d 86, 91-92 (La. Ct. App. 2001), writ deined, 811 So.2d 887 (2002), the Court of Appeal of Louisiana for the Fourth Circuit analyzed the "Act of God" defense under the federal general maritime law and Louisiana law and found that both apply the same analysis. The "Act of God" defense applies only if: (1) the accident is due directly and exclusively to natural causes without human intervention, and (2) no negligent behavior by the defendant contributed to the accident. Id. at 93.

Federal and state courts have held that Hurricane Katrina was an "Act of God." See e.g. Conagra Trade Group, Inc. v. AEP MEMCO, LLC, 2009 WL 2023174 (E.D. La. 7/9/09) (J. Fallon) ("It is uncontested that Hurricane Katrina was an unexpected and extraordinary force of nature, which is capable of bring classified as an Act of God at law."); Coex Coffee Int'l. v. Depuy Storage & Forwarding, LLC, 2008 WL 1884041 (E.D. La. 4/28/08) (J. Lemelle) (holding that the "Act of God" defense applied to loss resulting from Hurricane Katrina); Dollar Thrifty Auto Group, Inc. v. Bohn-DC, L.L.C., 23 So.3d 301, 304 (La. Ct. App. 2008) ("Clearly, Hurricane Katrina, with its unprecedented flooding and devastation, was a *force majeure* or Act of God that was unforeseen and

unavoidable."). Also, in its Tropical Cyclone Report regarding Hurricane Katrina, dated December 20, 2005, the National Hurricane Center described Hurricane Katrina as "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage and inflicted large loss of life," and as "one of the most devastating natural disasters in United States history." (Doc. #122-5). Thus, the issue before the court is whether Berglin's negligent behavior contributed to the vessel's coming lose from her moorings and damaging plaintiffs' property.

The uncontroverted testimony shows that Berglin asked two experienced mariners to ensure that her vessel was adequately moored. Both men testified that they believed that the vessel's moorings were proper. Specifically, Beber testified that he added "two three-quarter-inch lines to the bowsprit to keep the bow from swinging," and then he "ran another spring line to the bowsprit off of the forward pile - - the aft pilings to hold [the TRUST ME II] as firmly in the slip as possible." Beber also testified that he thought that the TRUST ME II "was secured as well as it could be secured in its location." Further, Beber testified that, after Hurricane Katrina, the buildings next to Berglin's slip were collapsed, Berglin's dock and piers were gone, and that the pilings were bent at a 45 degree angle. He also testified that other docks were destroyed and that none of the sailing vessels that were moored in the area were in their original locations. It is evident that there is nothing more Berglin could have done to secure the vessel in the face of Hurricane Katrina, especially in light of the fact that the dock to which the vessel was moored was destroyed and she would have become loose no matter how she was tied.

Moreover, the purported disputed issues of fact raised by the plaintiffs are nothing more than hindsight speculations about what could have been done, not facts which disprove defendant's evidence that she exercised reasonable care under the circumstances.[3]

Additionally, plaintiffs' interpretation of the significance of the post-storm condition of two other vessels that were moored near the TRUST ME II is erroneous. Plaintiffs argue that the TRUST ME II must have been improperly moored because Beber's vessel did not break free from its moorings and a vessel owned by Jean Luc was undamaged and did not damage anyone else's property. Beber's vessel sank where it had been moored and Jean Luc's vessel broke free from her moorings and landed across the canal from its original location. The fate of these vessels was simply fortuitous, and does not lead to a conclusion that the TRUST ME II was less adequately moored that those two vessels.

## CONCLUSION

The undisputed facts show that Berglin's actions in have the vessel secured in anticipation of Hurricane Katrina were reasonable under the circumstances.

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, Judy C. Berglin (Doc. #122) is **GRANTED**, and the case is **DISMISSED**.

---

[3] For example, plaintiffs argue that the TRUST ME II's mooring lines should have been placed higher on the pilings so that she could move with the storm surge. Regardless of the actual size of the storm surge, it would not have been reasonable to moor the TRUST ME II with enough slack to account for any storm surge that may be created by a Category 5 hurricane.

New Orleans, Louisiana, this 19th day of March, 2010.

 _____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**